UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
at ASHLAND

CIVIL ACTION NO. 09-cv-109-KKC

VICKY JEAN SIZEMORE                                                                                          PLAINTIFF

v.                           **MEMORANDUM OPINION AND ORDER**

MICHAEL J. ASTRUE, Commissioner
of Social Security                                                                                            DEFENDANT

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

This matter is before the Court on cross Motions for Summary Judgment filed by Plaintiff Vicky Jean Sizemore ("Sizemore") and the Defendant Michael J. Astrue, Commissioner of Social Security ("the Commissioner"). Rec. 8, 12. Sizemore, through counsel, asserts that Commissioner's final decision denying her claim of disability is not supported by substantial evidence because: (1) the Commissioner failed to consider additional vocational adversities in a borderline age situation; and (2) relied on hypothetical questions to a vocational expert ("VE") that did not accurately reflect Sizemore's limitations as accepted by the ALJ. The Commissioner asserts that the decision denying Sizemore's claim for benefits is supported by substantial evidence in the record. For the reasons set forth below, the Court will grant Sizemore's motion for summary judgment in part and remand the case to the Commissioner for further proceedings.

I.      **FACTUAL BACKGROUND**

Sizemore filed an application for a period of disability and disability insurance benefits on March 8, 2005. Tr. 14, 53. Sizemore alleged disability due to fibromyalgia, carpal tunnel syndrome, asthma, arthritis, irritable bowel syndrome, major depression, panic disorder with agoraphobia and borderline intellectual functioning. Tr. 101-02. Prior to Sizemore's alleged

disability onset date, she obtained a high school degree, attended cosmetology classes, and worked as a hairdresser. Tr. 99, 302, 378, 382. Sizemore claims to have stopped working as a beautician in June 2003. Tr. 378. Her application for disability benefits was denied initially and on reconsideration.

Sizemore then submitted a timely request for a hearing before an Administrative Law Judge ("ALJ"). An initial hearing was held before ALJ Charlie Paul Andrus on December 13, 2006 and a supplemental hearing was held on June 15, 2007. Tr. 343-371. On September 28, 2007, the ALJ issued a decision denying Sizemore's claim for benefits. Tr. 11-31, 372-89. On the date of the ALJ's decision, Sizemore was fifty-four (54) years old. Tr. 29.

After the ALJ's decision was issued, Sizemore timely requested review of the hearing decision by the Social Security Administration's Appeals Council. However, on October 21, 2009, the Appeals Council denied Sizemore's request for review. Tr. 6-10. Because Sizemore has timely exhausted all available administrative remedies, her claim is ripe for review by this Court.

## II. DISCUSSION

### A. Standard of Review

When reviewing decisions of the Social Security Agency, the Court is commanded to uphold the Agency decision, "absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (internal quotation marks and citation omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 285-86 (6th Cir. 1994).

This Court is required to defer to the Agency's decision "even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). A district court may not review the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *Nelson v. Comm'r of Soc. Sec.*, 195 Fed. App'x 462, 468 (6th Cir. 2006); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Where the Commissioner adopts the ALJ's opinion as his own, the Court reviews the ALJ's opinion directly. *See Sharp v. Barnhart*, 152 Fed. App'x 503, 506 (6th Cir. 2005).

**B. Overview of the Process**

Under the Social Security Act, disability is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007). The disability determination is made by an ALJ using a five step sequential evaluation process. *See* 20 C.F.R. § 416.920. The claimant has the burden of proving the existence and severity of limitations caused by her impairment and that she is precluded from doing past relevant work for the first four steps of the process. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). However, the burden shifts to the Commissioner for the fifth step. *Id.*

At the first step, the claimant must show she is not currently engaging in substantial

gainful activity. *See* 20 C.F.R. § 416.920(a)(4)(I); 20 C.F.R. § 404.1520(b). At the second step, the claimant must show that she suffers from a severe impairment or a combination of impairments that is severe. *See* 20 C.F.R. § 404.1520(c). At the third step, a claimant must establish that her impairment or combination of impairments meets or medically equals a listed impairment. *See* 20 C.F.R. § 404.1520(d); 20 C.F.R. § 404.1525; 20 C.F.R. § 404.1526.

Before considering the fourth step, the ALJ must determine the claimant's residual functional capacity ("RFC"). *See* 20 C.F.R. § 404.1520(e). The RFC analyzes an individual's ability to do physical and mental work activities on a sustained basis despite any existing mental or physical impairments. In determining the RFC, the ALJ must consider all of the claimant's impairments, including those which are not severe. *See* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545. Once the ALJ has determined the claimant's RFC the inquiry proceeds to step four. At step four, the ALJ must determine whether the claimant can perform the requirements of her past relevant work. *See* 20 C.F.R. § 404.1520(f).

In the event that the claimant cannot perform her past relevant work, the inquiry proceeds to step five. At the fifth step, the burden shifts to the Commissioner to establish that there is sufficient work in the national economy that the claimant can perform given her RFC, age, education and work experience. *See* 20 C.F.R. § 404.1520(g); 20 C.F.R. § 404.1512(g); 20 C.F.R. § 404.1560(c).

**C. The ALJ's Decision**

After finding that Sizemore met the insured status requirements of the Social Security Act ("SSA") through December 31, 2007, the ALJ determined at step one of the disability evaluation process that Sizemore had not engaged in substantial gainful activity since June 28,

2003, the alleged disability onset date. Tr. 16. The evidence shows that prior to the alleged disability onset date, Sizemore was working as a beautician or hairdresser.

At step two, the ALJ determined that Sizemore had the following severe impairments: (1) osteoarthritis, (2) fibromyalgia, (3) carpal tunnel syndrome, (4) asthma, (5) borderline intellectual functioning, (6) major depressive disorder, (7) panic disorder with agoraphobia, and (8) personality disorder with dependent features. Tr. 16. With regard to joint pain, stiffness and soreness, the ALJ noted that Sizemore has reported persistent problems that limit her ability to lift, bend, sit, stand and walk. *Id.* Furthermore, the ALJ recognized that Sizemore was formally diagnosed with fibromyalgia, osteoarthritis and arthritis. *Id.* Treatment records, including those from Dr. Angela Lewis, Sizemore's treating physician show findings suggestive of fibromyalgia, a degree of crepitus, and decreased motion. *Id.* These pain symptoms have apparently been treated by Sizemore with over-the-counter medications and physical therapy. *Id.* at 17.

With regard to Sizemore's asthma, the ALJ noted that she has a long history of asthma and uses an inhaler on a daily basis. *Id.* Pulmonary function studies have shown a mild degree of expiratory obstruction and the ALJ found that based on the medical evidence in the record, Sizemore should avoid a work environment containing pulmonary irritants. *Id.*

In terms of mental functioning, the ALJ considered testing as measured by the Wechsler Adult Intelligence Scale - Third Edition ("WAIS-III") administered during consultative evaluations of Sizemore by Mary Lou Cantrell ("Ms. Cantrell") and Andrea Evans, Psy.D. ("Ms. Evans") in 2007. *Id.* These test results indicated that Sizemore has borderline intellectual functioning. *Id.* The ALJ also considered Sizemore's mental health and noted that while she had no history of formal mental health treatment, she was prescribed psychotropic medication by

her primary care physicians to deal with complaints of depression, anxiety and panic. *Id.*

The ALJ also considered Sizemore's additional complaints and diagnoses of obesity, hypertension, carpal tunnel syndrome, gastroesophageal reflux disease ("GERD"), irritable bowel syndrome, diverticulosis, plantar fasciitis and ocular hypertension and found that the evidence in the record did not show that these conditions singly or in combination imposed additional and significant work-related limitations on Sizemore's ability to function in the work environment. *Id.* While Sizemore was found to suffer from moderate obesity, her weight appeared to be stable and she remained able to move around and ambulate in a normal fashion. *Id.* With regard to carpal tunnel syndrome, the ALJ noted that examinations showed Sizemore being able to use her hands for fine and gross manipulation without difficulty and having normal grip strength. Tinel's signs were not consistently positive and during a consultative examination by Dr. Barefoot in April 2007, Sizemore was able to fully flex and extend the fingers of both hands and her grip was good bilaterally. *Id.* The ALJ also found no evidence in the record of muscle wasting or asymmetry affecting her hands or forearms and no evidence of joint tenderness, redness, warmth or edema. *Id.*

In addressing Sizemore's hypertension, the ALJ noted that this impairment was being managed with proper medication and there was no evidence of end organ damage or cardiac symptoms secondary to the condition. *Id.* at 17-18. Left diverticulosis was noted by a colonoscopy in December 2001, however, Sizemore's subsequent biopsy was negative for collagenuous-colitis and improvement in her condition was noted. *Id.* at 18. With regard to the gastrointestinal distress, Sizemore's symptoms were apparently controlled by medication and she did not suffer from related weight loss. *Id.*

With regard to plantar fasciitis, the ALJ noted that Sizemore was not compliant with treatment recommendations and continues to demonstrate the ability to ambulate effectively. *Id.* Finally, the ALJ referenced the opinion of Dr. Gross that Sizemore did not have a visual impairment affecting her ability to perform work-related activities. *Id.*

Despite the existence of the aforementioned severe and non-severe impairments, the ALJ determined at step three that Sizemore did not have an impairment or combination of impairments meeting or medically equaling a listed impairment. *Id.* The ALJ first considered the musculoskeletal impairments and found that Sizemore did not meet Listing 1.02 because she remained able to ambulate effectively and perform fine and gross movements effectively. *Id.* The ALJ also found no evidence of nerve root compression, spinal arachnoiditis or lumbar spinal stenosis as required by Listing 1.04. *Id.* In considering Sizemore's breathing impairments, the ALJ found that while severe, they did not meet Listings 3.00, 3.02, 3.03 or 3.08. *Id.* With regard to Sizemore's mental impairments, the ALJ found that Listings 12.04 and 12.06 were not satisfied because Sizemore had only mild limitations in activities of daily living, moderate limitations in social functioning, moderate difficulties with concentration, persistence or pace and no evidence of repeated episodes of decompensation.[1] *Id.* at 18-20.

Prior to step four, the ALJ assessed Sizemore with an RFC limiting her to:

lifting and carrying no more than 25 pounds maximum occasionally and 20 pounds maximum frequently; standing/walking no more than 20-30 minutes without interruption; no more than occasional climbing, balancing, stooping, crouching, kneeling, or crawling; no working at heights or around dangerous machinery; no subjecting the body to vibration; no work in chemicals, dusts, fumes or humidity extremes; and mentally, has at least "fair" (defined as limited, <u>but satisfactory</u>) ability to: relate to coworkers; deal with the public; deal with work stresses; understand, remember, and carry out complex job

---

[1] With regard to Sizemore's intellectual functioning, the ALJ determined that while she had borderline intellectual ability, she failed to satisfy Listing 12.05 dealing with mental retardation. *Id.* at 20.

7

instructions; and "good" (defined as more than satisfactory) ability to: follow work rules; use judgment; interact with supervisors; function independently; maintain attention/concentration; understand, remember, and carry out detailed job instructions; behave in an emotionally stable manner; relate predictably in social situations; and to demonstrate reliability.

*Id.* at 21. Based on this RFC assessment, the ALJ determined that Sizemore was unable to perform the requirements of her past relevant work as a hairdresser. *Id.* at 29.

Finally, the ALJ considered Sizemore's ability to perform other work. The ALJ noted that Sizemore was fifty (50) years old on the alleged disability onset date and was considered as an individual closely approaching advanced age under 20 C.F.R. § 404.1563.[2] The ALJ then found that Sizemore had at least a high school education and was able to communicate in English. *Id.* Based on Sizemore's age, education, work experience and RFC, the ALJ determined at step five that there are other jobs existing in significant numbers in the national economy that she can perform. *Id.* at 30. In making this finding, the ALJ relied on testimony by a vocational expert ("VE") claiming that Sizemore could perform 20% of the light and 30% of the sedentary jobs under the Social Security Administration's grid rules. *Id.*

Based on these foregoing findings, the ALJ concluded that Sizemore was not disabled as defined by the Social Security Act, from the alleged disability onset date through the date of the ALJ's decision. *Id.* at 31.

**D. Analysis**

Sizemore presents two primary arguments in support of her motion for summary judgment. First, that because her case is a borderline age situation and the ALJ erred by failing

---

[2] A person is considered closely approaching advanced age if they are age 50-54 and advanced age is 55 and older. 20 C.F.R. § 404.1563(d),(e). Where a person falls under the closely approaching advanced age category, the ALJ must consider that their age along with severe impairments and limited work experience may seriously affect their ability t o adjust to other work. 20 C.F.R. § 404.1563(d).

8

to consider her additional vocational adversities. Second, Sizemore argues that the ALJ's finding at step five, that there are a significant number of jobs that she can perform, is not supported by substantial evidence because it relied on VE testimony based on hypothetical questions that did not accurately describe her physical and intellectual limitations.

**1. Sizemore's case does not represent a borderline age situation.**

Sizemore's first asserts that the ALJ erred by failing to follow agency policy as reflected in HALLEX II-5-3-2, which instructs the ALJ to consider additional vocational adversities in borderline age situations. The ALJ placed Sizemore in the "closely approaching advanced age" category. The "closely approaching advanced age" category spans ages 50 to 54, and is followed by the "advanced age" category which includes persons age 55 and older. 20 C.F.R. § 404.1563(d)-(e). Subsection (b) of the regulation governing the age categories provides that there is to be some flexibility between the age categories in "borderline" situations:

> How we apply the age categories. When we make a finding about your ability to do work under § 404.1520(f)(1), we will use the age categories in paragraphs (c) through (e) of this section. We will use each of the age categories that applies to you during the period for which we must determine if you are disabled. *We will not apply the age categories mechanically in a borderline situation. If you are within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled, we will consider whether to use the older age category after evaluating the overall impact of all the factors in your case.*

20 C.F.R. § 404.1563(b) (emphasis added). While the ALJ concluded that Sizemore was "closely approaching advanced age" and cited 20 C.F.R. § 404.1563, the ALJ did not discuss Sizemore's age categorization in his opinion. Of particular relevance in this case, he did not explicitly address the possibility that Sizemore, 7 1/2 months away from her 55th birthday, presented a "borderline age" situation. The ALJ's opinion did not discuss the possibility of moving Sizemore to the "advanced age" category.

9

According to the Social Security Administration's Hearings, Appeals and Litigation Law Manual ("HALLEX"), a claimant presents a borderline age situation where: (1) the claimant's age is within a few days or months of a higher age category; and (2) use of the higher age category would result in a finding of disability. *See Application of the Medical-Vocational Guidelines in Borderline Age Situations*, Soc. Sec. Admin., Office of Hearings and Appeals, *Hearings, Appeals and Litigation Law Manual* II-5-3-2. In borderline age situation, the ALJ must then decide whether it is more appropriate to use the claimant's chronological age or the higher age of the next category. To do this, the ALJ utilizes a "sliding scale" approach:

> under this approach, the claimant must show progressively more additional vocational adversity(ies)–to support use of the higher age–as the time period between the claimant's actual age and his or her attainment of the next higher age category lengthens.

Examples of "additional vocational adversities" include the presence of an additional impairment that infringes on the claimant's remaining occupational base; having only marginal ability to communicate in English; a history of work experience in an unskilled job in one isolated industry or work setting. Absent a showing of such "additional vocational adversities," the ALJ will use the claimant's chronological age.

In reviewing Sizemore's arguments, she assume that her case qualifies as a borderline case because she was fifty-four years old when the ALJ's hearing decision was issued. However, as noted above, a case only qualifies as "borderline" where a claimant's chronological age is a few days or months from a higher age category. HALLEX II-5-3-2. In this case, Sizemore did not turn 55 until approximately 225 days after the ALJ's decision was issued. Sizemore has not presented any case law or agency interpretation supporting a finding that 7 1/2 months is a "borderline age" situation.

The term "few" is defined as "consisting of or amounting to only a small number," or "at least some but indeterminately small in number." Merriam-Webster's Online Dictionary, http://www.merriam-webster.com/dictionary/few. The ordinary meaning of a "few" months does not cover a period of over 7 months. Because this case does not present a borderline age situation, the Court finds that the ALJ did not err by not considering Sizemore's borderline age as it relates to the Medical-Vocational Guidelines. *See generally Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 399 n.4 (6th Cir. 2008)(noting that the parties did not dispute that the claimant presented a borderline age situation where she was less than two months away from her fiftieth birthday).[3]

**2. Whether the ALJ's hypothetical questions to the VE adequately conveyed Sizemore's mental and/or physical impairments?**

Sizemore also argues that the ALJ's finding that there are a significant number of other jobs that she can perform is not supported by substantial evidence because it is based on testimony by a VE in response to hypothetical questions that did not accurately portray her physical and intellectual limitations.

A VE's testimony in response to a hypothetical question serves as substantial evidence in support of a determination that a claimant is capable of performing other work if the question

---

[3] Sizemore has submitted a response opposing the Commissioner's motion for summary judgment (Rec. 13). Sizemore argues that the ALJ erred by using her age at the alleged disability onset date rather than her age at the time of the decision thereby resulting in a failure to consider her additional vocational adversities as required by HALLEX in "borderline age" situations. However, even assuming that Sizemore is correct, any error by the ALJ would be harmless. As noted previously, an ALJ is only required to consider additional vocational adversities when the claimant is in a borderline age situation. In this case, the Court has found that Sizemore's case was not borderline because she would not have reached the "advanced age" category until at least 7 1/2 months after the ALJ's decision was rendered. Sizemore has offered no authority that such a lengthy period of time qualifies as borderline. As a result, regardless of whether the ALJ considered Sizemore's age as of the alleged disability onset date (50) or as of the date of the decision (54), her age category was the same. Accordingly, the Court finds that any error in this regard is not grounds for a remand.

accurately portrays the claimant's physical and mental impairments. *See Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239, 241 (6th Cir. 2002); *see also Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) (although an ALJ need not list a claimant's medical conditions, the hypothetical should provide the vocational expert with the ALJ's assessment of what the claimant "can and cannot do."). In this case, the ALJ relied on the VE's testimony in response to a hypothetical question that stated in relevant part:

> [l]et's assume that we have an individual with physical limitations in that they can lift a maximum occasionally of 25 pounds, frequently lift 20 pounds, can stand or walk for 20 to 30...minutes without interruption, can occasionally climb, balance, stoop, crouch, kneel or crawl, cannot work at heights,...cannot work in chemicals or dust or fumes or humidity extremes. Assume that the individual also suffers from depression and anxieties which result in some limitation....let's assume that we have an individual with a fair ability to relate to co-workers, deal with the public, deal with work stresses, understand, remember and carry out complex jobs, a good ability to follow work rules, use judgment, interact with supervisors, function independently and maintain attention and concentration, understand and remember, carry out detailed but not complex jobs, behave in a stable manner, relate predictably and demonstrate reliability.

Tr. 382-83. In response to this hypothetical, the VE testified that while Sizemore could not perform the requirements of her past work as a hairdresser, she could perform 20% of all light jobs and 30% of all sedentary jobs under the Social Security Administration's grid rules.

Sizemore claims that the ALJ's hypothetical should have advised the VE that her ability to grasp, lift, and finely manipulate was limited to non-repetitive activity as assessed by Dr. Barefoot. After performing a consultative examination of Sizemore on April 4, 2007, Dr. Barefoot noted that "[h]er ability to non-repetitively grasp, lift, and finely manipulate...appears to be intact." Tr. 329. However, Dr. Barefoot's opinion does not clearly preclude Sizemore from repetitive grasping, lifting or finely manipulating objects. The portion of Dr. Barefoot's opinion relied on by Sizemore touches on what she can do and does not discuss what she is

12

precluded from doing.

In reviewing Dr. Barefoot's report, it is unclear whether it would support a finding addition that Sizemore cannot repetitively grasp, lift, or finely manipulate objects. Dr. Barefoot found no evidence of muscle wasting or muscle asymmetry in Sizemore's hands and no evidence of joint redness or swelling. Tr. 327. Similarly, Dr. Barefoot found that Sizemore had good grip strength and was able to fully flex and extend her fingers. *Id.* Furthermore, Dr. Barefoot noted that Sizemore "is able to lift, carry, and handle objects." Tr. 329.

Sizemore relies on *Hensley v. Commissioner of Social Security*, 573 F.3d 263, 267 (6th Cir. 2009) where the claimant's treating physician made an unequivocal statement that he could not engage in repetitive pushing and pulling. *Id.* at 267. Despite this opinion, the ALJ determined that the claimant could do repetitive pushing and pulling but only on an occasional basis. *Id.* at 266. The Sixth Circuit found that the ALJ did not give adequate reasons for rejecting the claimant's treating physician's opinion and remanded the case for further consideration of whether the opinion should be given controlling weight. *Id.* at 267. Unlike *Hensley*, in this case Dr. Barefoot did not clearly preclude Sizemore from repetitive grasping, lifting, or finely manipulating objects. In addition, Dr. Barefoot was not Sizemore's treating physician, but was a consultative examiner so the ALJ would not have been required to give her opinion the same level of deference as was required in *Hensley*. As a result, the Court finds that *Hensley* does not control the outcome of this case.

Sizemore also relies on *Ealy v. Commissioner of Social Security*, 594 F.3d 504, 517 (6th Cir. 2010) in support of her argument that the hypothetical question relied upon by the ALJ failed to adequately advise the VE of her restrictions. In *Ealy*, a mental RFC assessment of the

13

claimant was conducted by a state agency non-examining physician who "specifically limited [the claimant's] ability to sustain attention to complete simple repetitive tasks to two hour segments over an eight-hour day where speed was not critical." *Id.* at 516 (internal quotations omitted). However, the ALJ's hypothetical omitted these speed and pace-based restrictions entirely. *Id.* Because the Sixth Circuit found that the hypothetical should have included these restrictions, it held that the hypothetical questions did not fully and accurately convey the claimant's limitations to the VE. *Id.*

The instant case is distinguishable from *Ealy* because as noted above, Dr. Barefoot did not specifically limit Sizemore's ability to repetitively grasp, lift or finely manipulate objects. Dr. Barefoot's opinion only indicated that Sizemore's ability to grasp, lift or manipulate non-repetitively were found to be intact. In addition, other portions of Dr. Barefoot's report and other substantial evidence in the record make it uncertain whether Sizemore was in fact precluded from repetitive grasping, lifting, or manipulation of objects.

Finally, the representative sedentary level jobs that the VE indicated Sizemore could perform do not require repetitive lifting, grasping or fine manipulation of objects. For example, the solicitor job requires the strength to exert up to ten pounds of force occasionally and/or a negligible amount of force frequently.[4] Dictionary of Occupational Titles[5] ("DOT"), Telephone Solicitor: 299.357-014. However, the job requires only occasional reaching and handling, frequent fingering and no feeling of objects (activity not present). *Id.* Similarly, the dispatcher job requires only occasional reaching, handling and fingering but no feeling of objects. DOT,

---

[4] The same amount of strength is required for the three representative sedentary jobs given by the VE.

[5] The DOT is a reference produced by the United States Department of Labor, listing thousands of jobs. 20 C.F.R. § 404.1566(d).

Dispatcher: 193.262-014. Finally, the surveillance job requires no reaching, handling, fingering or feeling. DOT, Surveillance: 379.367-010.

Because the Court finds that Dr. Barefoot's opinion and other evidence in the record do not clearly indicate that Sizemore could not repetitively grasp, lift, or finely manipulate objects, the ALJ did not err by failing to advise the VE of any such restrictions.

Sizemore also argues that the ALJ's finding that there are other jobs that she can perform is not supported by substantial evidence because the hypothetical question posed to the VE did not account for her borderline intellectual functioning. Sizemore notes that the representative jobs listed by the VE require a learning ability in the middle third of the population, well above what the medical evidence accepted by the ALJ showed her to be capable of.

Ms. Cantrell performed WAIS-III testing of Sizemore and reported that she had a full scale IQ score of 70 with a general learning ability at the second percentile.[6] Tr. 306. Sizemore asserts that because the ALJ did not advise the VE of these findings, the denial of her claim rests on jobs requiring intellectual functioning in the middle third of the population.

Upon reviewing the evidence in the record, the Court agrees that the hypothetical question considered by the VE did not fairly characterize Sizemore's impairments. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). When Sizemore was tested, her full scale IQ score was 70, which is at the borderline range of intellectual functioning. Tr. 305. Ms. Cantrell's report further indicated that approximately 98 percent of the population would be more intelligent than someone testing at Sizemore's level. *Id.* Relying on this testing, the ALJ determined that Sizemore's borderline intellectual functioning was a severe impairment.

---

[6] Sizemore has conceded that she does not meet Listing 12.05(C) for mental retardation and that the diagnostic requirement, as explained in *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2002), is not met.

15

Tr. 16, 17, 20. Accordingly, the fact that Sizemore's intelligence is well-within the lowest ten percent of the population (according to Ms. Cantrell, above only the lowest 2 percent of the population) is well-supported by the evidence in the record.

In reviewing the hearing transcript, it is not clear to what extent the hypothetical question accounted for Sizemore's borderline intellectual functioning. The hypothetical indicated that Sizemore had:

> a fair ability to relate to co-workers, deal with the public, deal with work stresses, understand, remember and carry out complex jobs, a good ability to follow work rules, use judgment, interact with supervisors, function independently and maintain attention and concentration, understand and remember, carry out detailed but not complex jobs, behave in a stable manner, relate predictably and demonstrate reliability.

Tr. 383. While these limitations appear to account for mental health issues, including major depressive disorder, panic disorder with agoraphobia and personality disorder with dependent features, they do not appear to relate specifically to her borderline intellectual functioning. This is particularly relevant in this case where Sizemore's borderline intellectual functioning was found to be a severe impaired, with an intelligence level above only the bottom two percent of the population.

This problem is exacerbated by the fact that the representative jobs cited by the VE do not accommodate Sizemore's level of intellectual functioning. In reviewing the DOT listings of these jobs, they all require a general learning ability in the middle third of the population. Several of the jobs expressly exclude persons in the bottom 10 percent of the population. This fact further bolsters the Court's finding that the hypothetical posed to the VE did not accurately portray Sizemore's mental impairments, because her level of intellectual functioning was omitted.

16

Accordingly, the Court finds that this case must be reversed and remanded to determine whether the Commissioner can meet his burden of proof at step five that there are a significant number of jobs that a hypothetical individual with Sizemore's borderline level of intellectual functioning can perform.

## III. CONCLUSION

Because the hypothetical question posed by the ALJ to the vocational expert did not account for Sizemore's borderline intellectual functioning, the determination that there are other jobs that Sizemore can perform is not supported by substantial evidence. As a result, the administrative decision must be reversed and this action remanded to the Commissioner for further consideration consistent with this opinion.

Accordingly, it is **HEREBY ORDERED** that:

(1) Plaintiff's motion for summary judgment (Rec. No. 8) is **GRANTED in part** to the extent that Plaintiff seeks a determination that the Commissioner's decision is not fully supported by substantial evidence**;**

(2) The Commissioner's motion for summary judgment (Rec. No. 12) is **DENIED** to the extent that it seeks a determination that the Commissioner's decision was fully supported by substantial evidence**;** and

(3) The administrative decision will be **REVERSED** and **REMANDED** for further administrative consideration by a separate **JUDGMENT** entered contemporaneously herewith.

This 28th day of July, 2010.



17